v. Oberlander et al. Mr. Goldstein, I see you reserved two minutes for rebuttal. You can begin whenever you're ready. Thank you, Your Honor. Jordan Goldstein of Selendigay for the Plaintiff Appellants. Unlike the case Your Honor has just heard, this case concerns a motion to dismiss. And it's undisputed that the amended complaint in this case adequately pled a violation of Section 12A1. The District Court ignored the amended complaint because it believed there was a contradiction between the amended complaint and the initial complaint. And the District Court held that the allegations in the initial complaint were conclusive judicial admissions that could not be withdrawn in an amended complaint. And it dismissed plaintiff's claims at the pleading stage as a result. This ruling contradicts Second Circuit law, including the Thodin-Tron case and the McKeon case. Both of which held that statements in a withdrawn complaint that are superseded by an amended complaint without those statements cease to be conclusive judicial admissions. In the McCrae case- Can I just ask you a question? Of course. That's an interesting question. Obviously there's a lot of cases going back and forth on that issue. But there's an alternative way the user agreement could be considered, which is that it's integral to the complaint. So it is the written contract that governs the relationship between the parties. It governs the user fees that, at least in part, are at issue here. You can correct me if I'm wrong, but you're seeking recovery of those fees. So why isn't the document that talks about the contract, that talks about those fees, integral to the complaint? There may be other things, obviously, that will come into play, but you're suggesting that a court can't look at the agreement that governs the user fees? Thank you, Your Honor. There are at least three responses to that. The first is, obviously, the user agreement, as we've stated in the briefing, is not cited in the amended complaint. Cited in the initial complaint, not in the amended complaint. It's not integral to the amended- It's not going to be cited, though. A party can't try to avoid a written contract by just not citing it. If it's integral to the claim, it doesn't matter whether it's cited or not. It's not integral to the claim in that- Why is it not integral to the complaint? So first of all, under the 29B claim, under any of the claims, we're not seeking rescission of the user agreement. The fees are not governed by the user agreement. They're governed by a separate document. And the contracts- What document are the user fees governed by if they're not governed by the user agreement? A separate web page that is linked to. You're telling me the user agreement isn't relevant to the user fees? Is that what you're telling me? We have- I mean, there's so many cases out there where, especially nowadays, where people sign user agreements, and then there's various claims brought with respect to who owes what, who- We have never said- We're not going to- Forget about the user agreement. There's no case out there that would suggest that when that's the only written document that governs the relationship, that somehow it's off limits just because someone doesn't cite it. So, the first point- I know there's a different issue about which agreement governs, and I have some questions for them about that. Understood. Because that's a big issue, but in terms of whether a court can look at the agreement that governs the fees that are at least in part the subject of the lawsuit, I just don't understand that. So, as I said, our position is that the user agreement is not integral to the claims, and that we're not seeking to avoid it, and that the fees are not stated in the user agreement. They're stated in a separate document. I do just want to respond to a different point, which is- What other separate document? You're saying this- The fees are governed by a separate fee schedule, not in the user agreement. But that's just the schedule. I mean, the user agreement talks about the obligation for the fees. The user agreement does talk about an obligation for the fees. So, to the extent there's a question about whether one party is responsible to the other party for fees, I would think it's the user agreement that controls. Then how much those user fees are requires looking at this schedule. Have I misunderstood something? No. No, Your Honor. All right. So, to that extent, how could you plead a complaint seeking user fees without referencing the agreement that creates that obligation? Because the- Well, the agreement that creates the obligation to pay fees are the individual trades that occur every time a user says, I want to buy or sell security. Nevertheless, you're only responsible for user fees on each of those transactions because the parties have a user fee agreement. I would agree with that, Your Honor. Okay. So, to that extent, the document that's going to control the user fee obligations is the user fee agreement. Now, you know, one question is whether it's integral. The other is whether in Rule 11 you could plead, you could responsibly plead an action here without referencing that agreement. Well, we certainly can plead under Rule 11 in that the agreement we are seeking to void is not the user agreement. We concede the user agreement has both legal and illegal purposes. What we are seeking to void are the individual contracts that arise every time Coinbase engages in a transaction. If we were to conclude it was integral to the complaint, why was the district court's decision still erroneous? I think your argument is that we don't know which agreement governs and that the 2017 September version, September 2017 had none of the language that they're requiring on to justify dismissal. Is that the argument? Yes, if I can respond to that, Your Honor. Yes. The statements that the district court focused on in the December 2021 user agreement relate to privity. It relates to whether or not Coinbase was in privity with its users. Those statements are legal assertions in a contract of adhesion. It's not a negotiated contract. There's not equal bargaining power. It's a contract of adhesion between retail investors about a legal concept, and it's included in that to negate essentially an element of a securities claim. It is pure ipsa dixit, and it's contrary to how Coinbase operates. We pled that Coinbase is a centralized exchange. That's JA 794 to 96. There's no dispute that Coinbase is a centralized exchange, and there's no dispute that with a centralized exchange, title passes to the depository when it receives funds. That's the Henry Bennett case. And Coinbase's view, and I think the district court's view, was that the user agreement described reality, and it's not. It is contrary to reality. I think you're missing my point. You're suggesting that even under the 2021 agreement, these are things that you could still plead out of. My suggestion to you, I thought, was your other point was that we don't even know that that agreement is the one that controls, that the September 2017 version had none of that language, and that the December 2019 version had the opposite language that said the sale of digital assets on Coinbase are purchases from Coinbase, right? Yes, and I want to be clear. Actually, both agreements, both the one that was offered to Plaintiff Rodriguez when he joined, and that's at JA 702, section 3.02, first sentence, and the one offered to Oberlander. What's the date of that one? That's the 2019 agreement. Okay. And the one offered to Oberlander and Underwood, this is the 2017 agreement, at JA 551, section 4.1, last sentence, both of those indicate that Coinbase is the seller. And the district court was not entitled on a 12-6 motion to pick the version of the user agreement that was most disadvantageous to Plaintiffs. So even if we assume that if the 2021, I know you disagree with this, but even if we assume the 2021 version, they win if that controls. Your argument is that can't be determined on a motion to dismiss. Definitely not. All right. Wasn't it integral to the district court's reasoning that the agreement had been a part of the original superseded complaint and, therefore, just as the district court concluded on the other aspect of his reasoning, if the original complaint is contradictory to the superseding complaint, the amended complaint, that voids the amended complaint. Wasn't that the basis? I mean the questions that my colleagues are asking implies that even if the original, had not been a part of the original complaint, it still would preclude, it still would justify the dismissal of this complaint. But I don't think that was the district court's reasoning, and I'm not sure I would agree with that. And it seems to me the argument you were making at first, saying that the original complaint does not, the contradiction found in the original complaint of the amended complaint does not void the amended complaint. It seems to me that was part of, that reasoning was part of the district court's reasoning, which you argue is incorrect. I would note the district court, the initial complaint, although it references a use agreement, does not specify which version of the use agreement. And as we made clear when we sought the TRO after Coinbase tried to change the terms, in our opinion, in an unconscionable way, we made clear two points. One, that we were not conceding that any version of the use agreement applied, and we were not conceding which version applied. So the fact, I mean, one thing the district court did was it cited our TRO application, and we've cited case law that material that's part of a TRO application is not to be considered on a motion to dismiss. But even if the district court should have acknowledged, or the district court was permitted to acknowledge, that we referenced a use agreement when we sought the TRO, we were not referencing the December 2021 use agreement. We were simply showing that the language that Coinbase was seeking to apply in the January 2021 would have divested the court of jurisdiction and was unconscionable. All right. Thank you. We'll hear from Ms. Flath. Good morning. May it please the court. Laura Flath from Skadden Arps on behalf of the defendant, Apeliz. Judge Bianco, I think your question at the outset was exactly right. The user agreement here is integral for multiple reasons. And as a result, Judge Engelmeyer's decision should be affirmed. Judge Engelmeyer assumed that the 2021 agreement is the one that was the operable one. And my question to you is, why isn't the 2017? Apeliz, this is a primary question. If you agree that the 2017 agreement didn't have the language that you're relying on for purposes of prevailing, correct? The 2017 agreement did not have certain of the language. But I think there is key language that plaintiff appellants are ignoring, which relates specifically to title and section 2.6.1 of the user agreement, which is language that does appear in the prior user agreement versions that Judge Engelmeyer specifically referenced. And that language states, title to digital currency shall at all times remain with you and shall not transfer to the Coinbase entity. But if privity is still a problem for you, independent of title, if there's privity, you still have a big problem, right? Under the first prong of printer for section 12A1 claims, the fundamental inquiry, the factual pivot here really is title. Are you the seller? Are you passing title? So in fact, 2.6.1 of these versions of the user agreement are critical. Under the state claims, which I think you can see would apply here, there would be jurisdiction over the state claims, correct? We do agree that there is jurisdiction over the state claims. Right. On the California law, for example, isn't privity the key? Under that California, contractual privity certainly is an important component. But a case that we cited, Jackson v. Fisher from the Northern District of California in 2015, expressly notes that in fact, the party was unable to allege that it purchased an alleged security from an entity which held title. It all comes back to title. Whether or not Coinbase allegedly owns the digital asset that is supposedly being passed over. Well, that may be a question that is then litigated. But I'm not sure how it is determinative for purposes of dismissal here. It is because, Your Honor, the operative language that does expressly make clear the terms of the agreement under which both parties are transacting on the platforms. That language has been there, and so it is completely fair for the district court to take notice of that language in exercising its gatekeeping function. The difference is the district court didn't do what you're doing here. The district court didn't look at the 2019 agreement or the 2017 agreement. The district court just assumed the 2021 agreement control, right? In fact, in footnote, I believe it's 5, Your Honor, at Special Appendix 13 through 14, it did say that there was substantially similar language in earlier versions. Right. But there's a question whether it's substantially similar. Certainly with... Because there appears to be some language that could be construed as creating ambiguity about that fact in the 2017 and 2019 agreements, no? With respect to the Section 3.2, yes, Your Honor, I do agree that there could be that. But plaintiff appellants here are completely ignoring that other section on title, which we do believe is critical, and that the district court judge did, in fact, cite. Let me take you back to your argument about whether this agreement is integral. If there had never been the initial complaint alluding to the user agreement and the complaint that was filed was what is the First Amendment complaint, no mention of the user agreement, how would we say it's integral when your adversary is not relying on it, says it's not looking to avoid any obligations in the user agreement? How is it so integral as to support dismissal when it's not pleaded at all? Absolutely, Your Honor. There are two different routes by which the court could arrive at that conclusion. First, the nature of the basis of the claims themselves. They are still seeking contractual rescission and, as conceded, to recover user fees that are imposed exclusively by the user agreement. But you would have to come to the court and say, we have a user agreement, and that user agreement says language favorable to us. And your adversary would say, we're not relying on that user agreement, and we're not trying to avoid our obligations under it. Then you're in litigation. How do you succeed in dismissing a complaint in the light of those disavowals? Because even in the face of a document not being expressly referenced, exactly as Judge Bianco recognized, there is decades of precedent that you cannot just simply ignore a document that is, in fact, integral, simply because a plaintiff does not want to accept it. And when you're looking at a contradictory allegation and a document, the document, the terms of use by which the parties work with one another, that can control in the face of that type of allegation. And the district court, at the motion to dismiss stage, is certainly entitled to consider the terms of that document. The other route, of course, is that a document can be integral if it is known to plaintiffs and relied upon. Sort of the other version. And that one is certainly one that the district court expressly referenced. The document was known not only because it had been referenced expressly in the original complaint as the user agreement, but also because of those TRO hearings, proceedings, in which plaintiffs came to the court and said, this document will affect these proceedings. And during the course of that TRO hearing, made representations and said, in fact, it is so important, we're going to amend to include Coinbase Inc., which to date had not been a party to the litigation. So you're saying that it seems to me to be quite contrary to volumes and volumes of our authority that anything said in a TRO or preliminary injunction application can justify the dismissal of a complaint on 12B6 matters, things that are not mentioned in any way in the complaint? That is certainly not the only reason by which this is happening. You're not saying simply- That's what you're arguing. I thought the question we were considering was whether it was appropriate to dismiss the complaint under 12B6. And there are Lord knows how many volumes of law that say that you look to the four corners of the complaint. Now you may also look to things that are so integral to the complaint that they can't be ignored. But you're saying something that was mentioned as pertinent to the litigation in the TRO application mentioned by the plaintiff. That can be a grounds for dismissing the complaint? It is pertinent to establishing one prong of whether or not a document is integral. Certainly the user agreement, the December 2021 agreement, was known to, possessed by the plaintiffs. And then you look to certainly whether it was relied upon in the claims that they are now asserting. Is it a document that is so integral to the nature of these claims? Which again, seek to fundamentally go to the relationship between users and Coinbase. And contractual rescission, including for fees that are imposed by the user agreement. So there are multiple paths to get to the understanding that out of 12B6 proceeding, this document, this contract, certainly can be considered. I had you skip this part, but on this issue of whether or not if someone contradicts their prior pleading, the district court can do what it did or not. There was a back and forth about our decision in McRae. And this is what we said in McRae and I want you to address. Of course. Even if plaintiff's statements in an earlier complaint are determined to be inconsistent with allegations in the superseding complaint, if not repeated, they are not part of the operative complaint. So how do you distinguish McRae? Of course, Your Honor. It goes back once again to the user agreement. McRae dealt exclusively with sort of directly contradictory factual allegations in which at that stage the defendant, at felonies, attempted to import allegations from the original complaint. So you're saying the difference between this case and McRae is that this involves a contract that they relied on. It involves an integral document that they sought to erase and to not have it be considered whether from scratch completely or a document that in fact had been around, that they had rights. So you're not relying on anything else they said in that first complaint. You're just relying on their incorporation of that user agreement? Exactly. The user agreement which sets forth that relationship, which as the district court held ultimately checkmates or destroys their claims. I just want to go back. Judge LaValle touched on this. In paragraph 273, even of the original complaint, they said Coinbase entered into contracts via the Coinbase user agreement. So they didn't say which user agreement. It's not like they in the first complaint said the 2021 user agreement. So whatever complaint you look at, this issue of which version controls was never conceded, right? But they didn't say user agreements, plural. They say the user agreement. And at that point – Well, can't that be 2017 or the 2019? That contradicts it. It says that the sale of assets is between your company and them, right? Because certainly they also reference that this is the user agreement in place during the class period, which is the paragraph immediately before appendix 88, I believe it is, and that's paragraph 272. They're referencing during the class period, which is from October 2019 moving forward. And, in fact, in all of their certifications moving for appointment as lead plaintiffs, all three represented that they had not transacted earlier than February 2019. So the contract, no matter which one again, even if there were a dispute as to which user agreement was applying, that language, section 2.6.1 with respect to title, has always been in place. But the 2019 agreement also has the language about purchasing from Coinbase, right? It does. And this is a contract you write. Yes. So the ambiguity there is the concern that, well, what are you selling if you don't have title? Again, it goes back to the title, and that is where that – You are relying on them, but you have to have title in order to be liable at all. First of all, you need to convince the court of that as a matter of law, but there's ambiguity when you say you're selling it. What are you selling? So in that instance, Your Honor, I think it is important to go back to sort of the allegations of these are assets that are held in a wallet, and that's what 2.6, section 2, deals with. I understand all this, but I don't understand how it gets decided at dismissal rather than they plead their – second amended complaint is their only pleading. You say, ah, but we have a user agreement, and under that user agreement, we told them we never have title. And they come back and they say, yes, but that user agreement also says we're purchasing from them. So this goes back and forth and gets resolved. I am still trying to figure out how it gets resolved at dismissal. Absolutely, Your Honor, and because the point is on Pinter, which is talking only about the section 12 claims here for the subset of tokens that are alleged there. The pivotal factual inquiry really does go back to title. Privity is on top of that. All of the sections in section 3.2 relate perhaps to privity, but if you're talking about title, which is the fundamental inquiry with respect to Pinter and the first prong, it should be assessed on the basis of title. Your position is even in parties in privity, if title doesn't pass, that there is no claim? Is that your position? That is with respect to the section. Under state law, too. Your position is under California state law. Because you can see the district court erred in saying no supplemental jurisdiction, right? Correct, Your Honor. So we have to look at state law, too? Your position is under state law, like California law. Even if you were in privity, there is no claim? Fundamentally, it is still about who is passing the title. I'm trying to find the authority for that. What case under California law do you cite for this idea that two parties in privity, that somehow a claim can't exist because title doesn't pass? Where is that under California law? That would be the Jackson v. Fisher case, Your Honor, that we cited in both the motion to dismiss as well as our briefing here. All right. I'll take a look at that. Thank you. Thank you, Your Honor. You have two minutes, Mr. Goldstein. Thank you, Your Honor. First, I just want to note as to the section 12A1 claim, there are two prongs to Pinter, only one of which involves the passing of title. There's a direct seller claim and there's a solicitation claim. I think our brief adequately addresses the basis for the solicitation prong claim, but I'm happy to answer questions if Your Honor have those. I just do want to note that title only addresses one independent basis for the 12A1 claim. I also want to note that as for the language on which the district court focused in the user agreement is simply a legal assertion in a document that Coinbase created, a contradictory document that Coinbase created, as Your Honor's questions point to, where Coinbase in each of the documents that was offered to each of the plaintiffs in this case has statements that Coinbase is the seller, at least certainly indicates and could be read as saying that Coinbase is the seller. The district court certainly had no basis for picking the one most disadvantageous to plaintiffs. But even if the 2021 user agreement did control, the fact that Coinbase inserted into its user agreements provisions that are intended to defeat a securities claim under McMahon is not something that should have been given weight. Even if there's not an express waiver of a securities claim, anything that operates to bar a plaintiff from exercising their rights under federal law as to securities claims is not enforceable. And so the sort of de facto waivers that Coinbase inserted intending to defeat a 12A1 claim should not be given effect. Well, and especially in circumstances where there are ambiguities in the document, such that one could read some aspect of it to say there is title and other aspects to say there isn't title. The fact that somebody seeks to avoid securities liability under the securities laws by having inserted the provision favorable to themselves when the document could be construed to indicate the opposite shouldn't invalidate a complaint. I would agree, and I would just add to that that the cases that have not followed McMahon have generally involved sophisticated parties where there was a bargain for remedy. And the court said, well, that's permissible. This is the antithesis of that. It is a take-it-or-leave-it contract offered to retail investors just through clicking through on a link. Your position on the title issue is that just because you put in an agreement, title to the digital currency should at all times remain with you. It's in your wallet. That doesn't necessarily control what is physically happening with respect to the currency. Is that your position? Yes, it's a Dixit. And Discovery will show that Coinbase kept title and that when a user engages in a trade- They said one thing in their agreement, but Discovery is going to show that they actually had the assets. Is that what you're suggesting? Yes. If they wanted to put in their agreement that nothing we sell is a security under the Howey test- Well, that's different, though. That's different. That's clearly a legal conclusion, but where the assets lie is a factual thing, right? It's a factual thing, and we want to undertake Discovery. It's certainly our understanding of how Coinbase works as a centralized exchange, and based upon other cases involving centralized depositories, like in Ray Bennett, the depository, the exchange, holds the title. And when a user trades with Coinbase, they trade with Coinbase. When they buy and sell, Coinbase is on each side of that transaction. This is not a decentralized exchange where users trade with each other like a Craigslist. It's a centralized exchange. Coinbase is the buyer. Coinbase is the seller. It stands in the middle of every trade, and that's what Discovery will show. And we'd like the opportunity to take it. All right. Thank you. Thank you both. Thank you. We'll reserve the decision.